

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MRM:MEF
F. #2018R00823

*610 Federal Plaza*
*Central Islip, New York 11722*

January 28, 2021

<u>By Hand and ECF</u>

Honorable A. Kathleen Tomlinson
United States Magistrate Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

   Re: <u>United States v. Carmine Simpson</u>
      <u>Docket No. 21-MJ-119</u>

Dear Judge Tomlinson:

  The government respectfully submits this letter to request a permanent order of detention with respect to the defendant Carmine Simpson. As further described below, the defendant poses a significant danger to the community and is a flight risk.

I. <u>Legal Standard</u>

  The defendant is charged by complaint with producing child pornography, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e). This charge carries a statutory presumption under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." <u>See</u> 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. §§ 2251 and 2252).

  To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." <u>United States v. Mercedes</u>, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight. <u>Id.</u>

  To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider:

    (1) the nature and circumstances of the crime charged;
    (2) the weight of the evidence against the defendant;

>   (3)  the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and
>   (4)  the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g).  Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider.  <u>Mercedes</u>, 254 F.3d at 436.

II.  <u>The Defendant Is a Danger to the Community and Presents a Serious Risk of Flight</u>

The defendant is 27 years old and employed by the New York City Police Department ("NYPD") as a police officer.  Notwithstanding the trust placed in him by his community, the defendant verbally abused children online, encouraged those children to physically abuse themselves, and intentionally persuaded numerous minors to produce sexually explicit photographs and videos of themselves and send them to him via the internet.  Based on the investigation to date, on or about and between April 2020 and December 2020, the defendant utilized Twitter to engage in sexually explicit conversations with at least 46 apparent minors.  These minors appear to range in age from ages 13 to 17 years old.  Many of them complained about school, their parents and homework, making clear that they were in fact minors.  During these conversations, the defendant suggested migrating from Twitter to other online applications, such as Snapchat, TikTok and Discord, and often asked his victims if they had X-box, suggesting they could play video games together. The defendant repeatedly asked his victims to FaceTime with him so that they could engage in phone sex.  And most disturbingly, the defendant was not only verbally abusive but he also encouraged certain victims to engage in destructive behavior, such as cutting themselves with a knife, choking themselves with belts and hitting themselves.

For instance, in September of 2020, the defendant engaged Jane Doe 1, who appears to have been approximately 13 years old, in a direct conversation on Twitter.  The defendant groomed Jane Doe 1 with flattery, and gradually progressed to asking her for nude images of herself and suggesting that they have "FaceTime sex."  Jane Doe 1 repeatedly made references to "school" and "school stuff," making clear that she was a minor.  Nonetheless, after a conversation about sex toys, the defendant ultimately convinced Jane Doe 1 to send a 12-second video of herself, in which she is inserting a hair brush into and out of her vagina.  The defendant encouraged Jane Doe 1, saying "Babygirl dont stop," "Keep the videos coming for me," and "I love how wet I made tou [sic]."  Based on the context of these chats, it appears that the defendant and Jane Doe 2 also communicated through other applications, likely including video in addition to instant message.

Similarly, beginning in April 2020, and for several months thereafter, the defendant engaged Jane Doe 2, who appears to have been approximately 15 years old, in a direct conversation on Twitter.  Disturbingly, the defendant repeatedly asked Jane Doe 2 to engage in violent behavior, during which she could have seriously injured herself.  For

example, he instructed Jane Doe 2 that he wanted to "see [her] cute little ass bright red from spankings." In response, Jane Doe 2 sent a picture of herself, kneeling on a bed, where she is nude from the waist down, her backside is red from apparently spanking herself, and her vagina is visible in between her legs. Later on that same day, the defendant asked Jane Doe 2 to "Bend over. Shove your useless face into the bed and spread those cheeks for daddy." Thereafter, Jane Doe 2 sent a video file depicting herself, lying face down on the ground with her backside up in the air, and her vagina is visible in between her legs. On a separate occasion, after Jane Doe 2 sent the defendant a video of herself masturbating, the defendant responded, "Try filming it again but this time, put your belt around your neck and pull it." Thereafter, Jane Doe 2 sent the defendant a video where she is using one hand to choke herself with a belt and her other hand to rub herself in between her legs. Dissatisfied with this video because Jane Doe 2's vagina was not visible, the defendant responded, "Move those panties to the side. Show daddy what you're doing." Thereafter, Jane Doe 2 sent a second similar video, which is 36 seconds long, in which she is still using one hand to pull on a belt to choke herself and the other hand to masturbate, but her vagina is partially visible. Notably, this was not the first video that Jane Doe 2 sent where she is choking herself, as the defendant had previously told her, "I like watching you choke yourself." In total, it appears that Jane Doe 2 sent the defendant approximately 51 files, including photographic images and videos, containing child pornography or child erotica.

Similarly, in November 2020, the defendant engaged John Doe 1, a transgender male, who was 13 years old at the time. The defendant not only asked John Doe 1 to have video calls with them but also to degrade themself by writing on their body with a Sharpie marker. Additionally, the defendant pressed John Doe 1 to take videos of themself engaging in destructive behavior, during which John Doe 1 could have injured themself. To the point, the defendant stated, "Well Im [sic] that case I want 4 videos \n1) you slapping your lretty [sic] face \n2) you gagging on your fingers (the more spit the better) \n3) you choking yourself\n4) you pick! Its your choice for number 4." As part of these conversations, John Doe 1 sent the defendant at least two sexually explicit videos. These include a video where John Doe 1 is lying down, fully nude, with marker on their body and their fingers in their vagina.

In addition to the charges pertaining to these three victims, the evidence obtained during the course of the investigation reflects that, while using Twitter to develop relationships with minors, the defendant repeatedly laid bare his desire for violence, including the use of firearms and knives. On May 8, 2020, the defendant, who as a police officer possessed at least one firearm, told one apparent minor that he liked "gun play." On the same day, he told a different one, "I literally want to hold a gun to a girls head and tell her 'this better be the best orgasm of my life or I'll blow your brains out' as I shove my cock down her throat." On November 29, 2020, the defendant expressed a desire for "One that I can choke till she turns blue and hold a gun to her head and she will beg for me." On December 31, 2020, the defendant told another apparent minor, "All I'm thinking about is just hurting and abusing you all night just to kill you after :)" The defendant also told others that he was into "knife play," that he wanted to use knives to "carve into your skin forever" and "and carve words into your body," and that he himself had a knife. In April 2020, when

one potential victim complained that it was hard to write on themselves, the defendant suggested that the victim "Just use a knife." And in August 2020, the defendant told another apparent minor, "I mean you would look amazing with a knife held against your throat as my handle crawls up your skirt."

The nature and circumstances of the charged crime and the weight of the evidence strongly support detention. The defendant is charged with one of the most serious federal crimes involving the sexual exploitation of children. On Twitter alone, the defendant successfully obtained at least 18 photographic images and 33 videos containing sexually exploitative material from children. By and large, these photos and videos depicted the victims in sexually suggestive positions or masturbating, all at the instruction of the defendant. These charges do not even include the transmission of live visual depictions of minors engaged in sexual conduct, which likely occurred via FaceTime and other video call applications that the defendant repeatedly referenced during his conversations with victims, which are separate violations of Title 18, United States Code, Section 2251(a). Instead of protecting his community, as a police officer undoubtedly should, the defendant has engaged in a pattern of disturbingly abusive behavior. The defendant's victims are the most vulnerable members of the community that the he has sworn to protect. By encouraging these children to not only create exploitative images of themselves for him but also engage in violent destructive behavior, he has likely caused great psychological—and potentially physical—injury to them.

Additionally, the evidence in this case is overwhelming. Based on the Twitter records alone, the defendant's compulsive online communications have impacted at least 46 different minors. The government is already in possession of numerous images of child pornography, which the victims demonstrably created for the defendant. Today, during a search of the defendant's home pursuant to a warrant, the FBI recovered not only photos on the defendant's phone that he had shared with his victims on Twitter but also photographed items in his home that were pictured in the images shared by the defendant on Twitter, including boxer shorts, a gun holster and bed spreads. This evidence does not even include records from the other online applications that the defendant referred to having used during chats with his victims, which the government anticipates obtaining soon. Additionally, law enforcement has already identified at least one of the defendant's victims, thereby confirming not only their age but also the potentially profound emotional and psychological effect of the defendant's actions.

The defendant poses a significant risk of flight if released. The offense with which the defendant is charged, producing child pornography, carries a statutory mandatory minimum of fifteen years' imprisonment and a statutory maximum of 30 years. 18 U.S.C. §§ 2251(a), 2251(e). The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk. See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990)

("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

III. Conclusion

      For the reasons set forth above, the defendant should be prevented from continuing to engage in such conduct, on the internet or in person. He poses a significant danger to the community if released pending trial, and no combination of bail conditions will ensure the safety of the community and the defendant's continued appearance before the Court.

Respectfully submitted,

SETH D. DUCHARME
United States Attorney

By:   /s/  Megan E. Farrell
Megan E. Farrell
Assistant U.S. Attorney
(631) 715-7862

cc:   Defense Counsel (by hand and ECF)
      Clerk of Court (by ECF)